## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

                                 Case No.  06-31181

STEVEN LEE STEAKLEY
ROBIN LYNN STEAKLEY

                  Debtors


## MEMORANDUM ON OBJECTION
## TO CONFIRMATION OF CHAPTER 13 PLAN


**APPEARANCES:**    LAW OFFICES OF MAYER & NEWTON
                  John P. Newton, Jr., Esq.
                  1111 Northshore Drive
                  Suite S-570
                  Knoxville, Tennessee  37919
                  Attorneys for Debtors

                  WILLIAMS & PROCHASKA, P.C.
                  Joseph R. Prochaska, Esq.
                  Victoria A. Ferraro, Esq.
                  401 Church Street
                  Suite 2600
                  Nashville, Tennessee  37219
                  Attorneys for Wells Fargo Financial Acceptance

                  GWENDOLYN M. KERNEY, ESQ.
                  Post Office Box 228
                  Knoxville, Tennessee  37901
                  Chapter 13 Trustee


**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection of Wells Fargo Financial Acceptance to Confirmation of Chapter 13 Plan (Objection to Confirmation) filed on July 17, 2006, by Wells Fargo Financial Acceptance (Wells Fargo). The court held a preliminary hearing on August 16, 2006, at which time the parties agreed that an evidentiary hearing was not necessary, and that the matter could be decided on stipulations, briefs, and oral argument.

Pursuant to the court's August 17, 2006 scheduling Order, the sole issue to be resolved is "whether 11 U.S.C. § 1325(a)(5) (2005) allows the Debtors to surrender the 2005 Ford Ranger securing the claim of Wells Fargo Financial 'in full satisfaction of the debt.'" The parties filed Joint Stipulations of Undisputed Facts (Joint Stipulations) on August 28, 2006, and oral argument was held on October 11, 2006. Wells Fargo filed its Memorandum of Law in support of its Objection to Confirmation on September 5, 2006, the Debtors filed their Brief in Support of Confirmation on September 29, 2006, and the Chapter 13 Trustee filed a Brief in Opposition to Wells Fargo's position on October 5, 2006.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(L) (West 2006).

# I

The Debtors filed the Voluntary Petition commencing their bankruptcy case under Chapter 13 of the Bankruptcy Code on June 6, 2006. Wells Fargo is a secured creditor under the terms of a Retail Installment Contract dated September 30, 2005, granting it a security interest in the Debtors' 2005 Ford Ranger (Ranger), the purchase price of which was financed by Wells Fargo. On June 12, 2006, Wells Fargo filed a claim in the amount of $24,578.45.

2

The Debtors' Chapter 13 Plan, as amended by their Second Amended Pre-Confirmation Chapter 13 Plan (Plan) filed on August 1, 2006, proposes weekly payments to the Chapter 13 Trustee of $300.00 for 60 months, plus all tax refunds in excess of $1,500.00, resulting in a projected 100% dividend to nonpriority unsecured creditors.  With respect to Wells Fargo's secured claim, the Plan proposes to "Surrender [the Ranger] in Full Satisfaction of the Debt."

In its brief and in oral argument on October 11, 2006, Wells Fargo argues that under long-standing Supreme Court precedent, the rights and claims of creditors in bankruptcy are determined by state law unless the Bankruptcy Code expressly modifies those rights and claims, and that whether Wells Fargo is entitled to a deficiency claim should, therefore, be determined under Tennessee law.

On March 13, 2006, the court issued its opinion in *In Re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006), holding that 11 U.S.C. § 1325(a), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), removed the ability of secured creditors to bifurcate their claims under 11 U.S.C. § 506(a) (2005) into secured and unsecured components when the provisions of the alphanumeric paragraph located at the end of § 1325(a) are met. *Ezell*, 338 B.R. at 342. Accordingly, under this "Anti-Cramdown Paragraph," also referred to as the "Hanging Paragraph," once the requirements therein are met, debtors wishing to retain possession of collateral under § 1325(a)(5)(B) must pay the full amount of the secured claim, and debtors wishing to surrender collateral under § 1325(a)(5)(C) may do so in full satisfaction of the debt. *Ezell*, 338 B.R. at 340.  Because Wells Fargo has posed an argument that differs from those argued and decided in *Ezell*, the court agreed to consider Wells Fargo's objection.  The court will not, however, rehash the

issues determined in *Ezell* and will not consider any of Wells Fargo's arguments that were previously decided.[1]  To the extent Wells Fargo relies on these *Ezell*-related arguments, the court finds *Ezell* controlling on these issues and adopts its analysis in that decision.  A copy of the *Ezell* opinion is attached hereto and incorporated herein by reference.

## II

Under BAPCPA, 11 U.S.C. § 1325(a) provides, in material part:

(a)  Except as provided in subsection (b), the court shall confirm a plan if—

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

---

[1] In its brief and during oral argument, Wells Fargo raised Congressional intent and prior legislative history, in addition to the state law issues.  Because the court has previously addressed these issues at great length in *Ezell*, finding that the language of the Anti-Cramdown Paragraph is not ambiguous, it will not resort to any further examination under the canons of statutory interpretation.  Accordingly, the court will not consider Wells Fargo's arguments focusing upon Congressional intent and/or legislative history.

4

      (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

      (iii) if—

            (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

            (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

      (C) the debtor surrenders the property securing such claim to such holder;

. . . .

      For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period[2]] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing[.]

11 U.S.C. § 1325(a).[3]

---

[2] The court supplies this word which was presumably inadvertently omitted by the drafters of the statute.

[3] All of the applicable requirements set forth in the Anti-Cramdown Paragraph apply in this case. The Debtors purchased the Ranger, a motor vehicle, on September 30, 2005, which was 249 days prior to filing their Voluntary Petition and within the 910-day period set forth in the statute. By virtue of the Retail Installment Contract, the Debtors granted Wells Fargo a purchase money security interest in the Ranger, which was acquired by the Debtors for their personal use. Wells Fargo has properly perfected its security interest, and as of the date of filing, Wells Fargo held a claim secured by the Ranger in the amount of $24,578.45.

In *Ezell*, JPMorgan Chase Bank, N.A. objected to confirmation of the debtors' plan, which provided for surrender of its collateral in full satisfaction of the debt owed. Amicus Curiae Briefs were filed by Knoxville TVA Employees Credit Union, Y-12 Federal Credit Union, Tennessee Members 1st Federal Credit Union, Holston Methodist Federal Credit Union, Citizens National Bank, Bank of Tennessee, ORNL Federal Credit Union, and TNBank, collectively, and by the National Association of Consumer Bankruptcy Attorneys. The various parties argued the following: (1) that the Anti-Cramdown Paragraph ensured that a creditor holding a "910 Claim" held a fully secured claim for the amount of the underlying debt and any deficiency following liquidation of the collateral would be paid as a secured claim; (2) that the Anti-Cramdown Paragraph did not apply to § 1325(a)(5)(C) prior to enactment of BAPCPA, and therefore, it did not apply post-BAPCPA, and a creditor holding a "910 Claim" would, therefore, still be entitled to an unsecured deficiency claim following liquidation of its collateral; (3) that the Anti-Cramdown Paragraph eliminated application of § 1325(a)(5) for any "910 Claim" since the creditor would no longer possess an allowed secured claim under § 506; and (4) that the Anti-Cramdown Paragraph ensured that a creditor holding a "910 Claim" held a fully secured claim for the underlying debt, irrespective of whether the collateral was to be retained or surrendered, leaving no possibility of either a cramdown or a deficiency balance.

In making its determination in *Ezell*, the court analyzed the pre- and post-BAPCPA versions of both § 1325(a)(5) and § 506(a), finding that the pre-BAPCPA version of § 1325(a)(5)(C) "relied upon pre-BAPCPA § 506(a) to bifurcate a creditor's claim into its allowed secured and unsecured components" when valuation was called into question. *Ezell*, 338 B.R. at 338 (footnote omitted). The court held that

The argument that Pre-BAPCPA § 506(a) had no application to surrender under Pre-BAPCPA § 1325(a)(5)(C) is misplaced. Valuation of a creditor's allowed secured claim under Pre-BAPCPA § 506(a) was "determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . . ." 11 U.S.C. § 506(a) (2004). Upon surrender under Pre-BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed secured claim was determined, while, for cramdown purposes under Pre-BAPCPA § 1325(a)(5)(B), replacement value was the criteria. *See Assoc. Commercial Corp. v. Rash*, 117 S. Ct. 1879, 1885 (1997).

*Ezell*, 338 B.R. at 339-40 (footnote omitted).

In accordance with this court's determination in *Ezell*, the bankruptcy court in *In re Brown*

summarized the effect of the Anti-Cramdown Paragraph as follows:

[I]f a debt is fully secured by virtue of the language of the Hanging Paragraph when the debtor retains the collateral in accordance with § 1325(a)(5)(B), then it also must be fully secured upon surrender of the collateral in accordance with § 1325(a)(5)(C). The Hanging Paragraph does not make any distinction between (B) and (C), and so neither can the Court. Such surrender would therefore satisfy the creditor's allowed secured claim in full and the creditor would not be entitled to an unsecured deficiency claim. There is no language anywhere in § 1325 that suggests a different result. If the Hanging Paragraph renders a creditor's claim fully secured, it is fully secured in all contexts. The Hanging Paragraph by its very language applies to the entirety of § 1325(a)(5) - not just § 1325(a)(5)(B) - and the same language cannot mean one thing if applied to § 1325(a)(5)(B) and another when applied to § 1325(a)(5)(C) to suit the preferences of secured creditors. No deficiency or unsecured claim can result from a claim that is fully secured.

*In re Brown*, 346 B.R. 868, 876-77 (Bankr. N.D. Fla. 2006); *see also In re Payne*, 347 B.R. 278, 283

(Bankr. S.D. Ohio 2006) ("From a practical standpoint, this application of § 1325(a)(5) requires the

creditor to forego the opportunity to take advantage of the provisions of § 506 should it liquidate the

collateral for less than the amount it is due, just as it requires the debtor to do so should the debtor

decide to retain the vehicle.").

Wells Fargo acknowledges that the pre-BAPCPA version of § 506(a) modified a creditor's state law rights by requiring that a deficiency balance be determined "in light of the purpose of the valuation and of the proposed disposition or use" of the collateral, rather than by relying upon Article 9 of the Uniform Commercial Code. 11 U.S.C. § 506(a) (2004). In cases of surrender, that method was generally determined by a liquidation or foreclosure sale of the property, with the remaining deficiency balance constituting an allowed unsecured claim. However, since under BAPCPA, § 506(a) no longer applies to "910 Claims," Wells Fargo argues that there is no longer a provision of the Bankruptcy Code altering state law rights under the Uniform Commercial Code and that the bankruptcy court has been taken out of the valuation process. Wells Fargo argues, therefore, that there is a "gap" that must be filled through application of state law, and so, all "910 Claims" are to be valued under Article 9, which allows for the assertion of deficiency claims in the event of liquidation and/or foreclosure.

"Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 99 S. Ct. 914, 918 (1979). Nevertheless, "*Butner* requires that when an actual conflict exists between state laws and bankruptcy laws enacted by Congress, the state laws are suspended." *Tidewater Fin. Co. v. Curry (In re Curry)*, 347 B.R. 596, 600 (B.A.P. 6th Cir. 2006). "The Bankruptcy Code is federal law that preempts state law where such laws conflict. Creditors' rights are curtailed in many ways once a debtor files bankruptcy due to the Bankruptcy Code's provisions regarding the automatic stay, discharge, and distribution of non-exempt assets, for example . . . [and] there is nothing inappropriate

8

about bankruptcy laws affecting a creditor's rights to recover under state law." *Brown*, 346 B.R. at 876.

Here, Wells Fargo is incorrect in its contention that § 506(a) is the only section of the Bankruptcy Code that allows for the modification of a secured creditor's rights. Section 1322 (11 U.S.C. § 1322 (2005)) expressly provides, in material part, that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]" 11 U.S.C. § 1322(b)(2) (2005). And even though the valuation process of § 506(a) is removed from the equation for "910 Claims," the argument advanced by Wells Fargo is flawed because the Anti-Cramdown Paragraph supersedes state law by providing an adequate method of valuation. The Anti-Cramdown Paragraph unambiguously states that for purposes of the cramdown provisions of 11 U.S.C. § 1325(a)(5)(B), § 506(a) "shall not apply" to a "910 Claim." Accordingly, a secured creditor falling within the scope of the Anti-Cramdown Paragraph has a fully secured claim for the amount of its debt, irrespective of whether the Debtor chooses to retain the collateral under § 1325(a)(5)(B) or to surrender it under § 1325(a)(5)(C).

Section 1325(a)(5)(C) cannot be read in a vacuum, and the court disagrees with Wells Fargo's interpretation of the interplay between the allowance of a secured claim and a determination of a creditor's secured status. It is through 11 U.S.C. § 501(a) (2005) that creditors are authorized to file proofs of claim. Allowance of claims or interests is then addressed by 11 U.S.C. § 502(a) (2005), which provides that a proof of claim is deemed allowed unless a party in interest objects, and

"[a] proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f).  With respect to a claim that is undersecured, § 506(a) kicks in to allow for bifurcation of the claim into secured and unsecured components and provides the methods of valuation to be utilized for doing so, based upon the "proposed disposition or use of such property." 11 U.S.C. § 506(a)(1).

Section 506(a) does not, however, provide any basis for alteration of the total amount of the creditor's claim, which is determined as of the filing date and reflected upon the proof of claim. Removal of § 506 from the equation simply results in the removal of a debtor's or creditor's ability to bifurcate the total claim into separate secured or unsecured portions.  It does not change the creditor's position as a secured creditor; instead, it solidifies the creditor's standing as a fully secured creditor.

Pre-BAPCPA, an undersecured creditor was not authorized to bifurcate its claim by virtue of state law; it was through application of § 506(a), which required that value be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property."  "Upon surrender under Pre-BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed secured claim was determined, while for cramdown purposes . . . replacement value was the criteria."  *Ezell*, 338 B.R. at 339-40 (citing *Assoc. Commercial Corp. v. Rash*, 117 S. Ct. 1879, 1885 (1997)).  Under BAPCPA, when cramdown under § 1325(a)(5)(B) is authorized, § 506(a) applies, and a creditor is still authorized to bifurcate its claim into secured and unsecured components.  However, BAPCPA now expressly sets forth the valuation method to be employed in

10

Chapter 7 and 13 cases where a "910 Claim" is not involved.  *See* 11 U.S.C. § 506(a)(2).[4]  In "910 Claims," bifurcation does not occur, and the creditor is deemed fully secured for the amount of the debt, notwithstanding § 506(a).

Section 1325(a)(5)(C) must also be read in conjunction with other provisions of Chapter 13 of the Bankruptcy Code, including § 1322(b)(2) and the Anti-Cramdown Paragraph.  To reiterate the court's holding in *Ezell*,

> [W]hen the creditor files its claim as secured, the Anti-Cramdown Paragraph precludes the use of Revised § 506(a) to reduce or bifurcate that claim into secured and unsecured components.  Unless the amount of the claim is subject to reduction for reasons *other than collateral value*, the creditor's allowed secured claim is fixed at the amount at which the claim is filed.

*Ezell*, 338 B.R. at 340 (emphasis added).  Since the focus of Wells Fargo's argument ultimately falls back on the proper valuation of the claim and its entitlement to a deficiency claim, its argument must fail.  Irrespective of the vehicle used to do so, i.e., the Uniform Commercial Code or another state statutory basis, "[a]llowing a creditor to pursue a deficiency claim following surrender of collateral pursuant to § 1325 would in all practical effect bifurcate the secured creditor's claim, in violation of the plain meaning of the hanging paragraph."  *In re Evans*, 349 B.R. 498, 501 (Bankr. E.D. Mich. 2006).

---

[4]         (2)  If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing.  With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506(a)(2).

> Certainly, state law defines creditors' rights, including the right to a deficiency. However, state law determines rights in property only to the extent such rights are not modified by the Bankruptcy Code.  Section 1325(a)(5), along with § 1322(b)(2) (which provides that a plan may modify the rights of holders of secured claims), expressly permits modification of secured creditors' rights, including hanging paragraph creditors.  Consequently, even though [a creditor] might be entitled to a deficiency outside of bankruptcy, it is not entitled to an allowed claim for any such deficiency here[.]

*In re Osborn*, 348 B.R. 500, 506 (Bankr. W.D. Mo. 2006) (footnotes and internal quotations omitted).

Based upon the court's determination in *Ezell* and the foregoing analysis, the court finds that state law is preempted by the Bankruptcy Code with respect to modification of secured creditors' rights under § 1325(a)(5), and that by removing § 506 from application to "910 Claims," the Anti-Cramdown Paragraph serves to solidify the secured status of a creditor holding a "910 Claim" by providing that creditor with a fully secured claim, without regard to whether the debtor proposes to retain or surrender the collateral.  Accordingly, Wells Fargo's Objection to Confirmation filed on July 17, 2006, will be overruled, and the Debtors' Chapter 13 Plan shall be confirmed.

FILED:   January 26, 2007

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

12

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

LARRY E. EZELL                                        Case No.  05-38219
REGINA A. EZELL

           Debtors


## MEMORANDUM ON OBJECTION TO CONFIRMATION
## FILED BY JP MORGAN CHASE BANK, N.A.


**APPEARANCES:**    RICHARD M. MAYER, ESQ.
           1111 Northshore Drive, Suite S-570
           Knoxville, Tennessee  37919
           Attorney for Debtors

           HUSCH & EPPENBERGER, LLC
           Holly N. Knight, Esq.
           Christopher M. Kerney, Esq.
           2525 West End
           Suite 1400
           Nashville, Tennessee  37203
           Attorneys for JPMorgan Chase Bank, N.A.

           GWENDOLYN M. KERNEY, ESQ.
           Post Office Box 228
           Knoxville, Tennessee  37901
           Chapter 13 Trustee

           HODGES, DOUGHTY & CARSON
           Thomas H. Dickenson, Esq.
           Post Office Box 869
           Knoxville, Tennessee  37901-0869
           Attorneys for Amicus Curiae Intervenors, Knoxville TVA Employees Credit
           Union, Y-12 Federal Credit Union, Tennessee Members 1st Federal
           Credit Union, Holston Methodist Federal Credit Union, Citizens National
           Bank, Bank of Tennessee, ORNL Federal Credit Union, and TNBank

NATIONAL ASSOCIATION OF CONSUMER
BANKRUPTCY ATTORNEYS
  Tara Twomey, Esq.
  2300 M. Street
  Suite 800
  Washington, DC  20037
BOND, BOTES & LAWSON, P.C.
  Cynthia T. Lawson, Esq.
  5418 Clinton Highway
  Knoxville, Tennessee  37912
  Principal Attorneys for Amicus Curiae Intervenors,
  National Association of Consumer Bankruptcy Attorneys

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection to Confirmation of Plan and Plan Terms Filed by JPMorgan Chase Bank, N.A. (Objection to Confirmation) filed on December 2, 2005, by JPMorgan Chase Bank, N.A. (Chase), a secured creditor, objecting to confirmation of the Debtors' Chapter 13 Plan. A preliminary hearing on the Objection to Confirmation was held on January 4, 2006, at which time the parties agreed that an evidentiary hearing would not be required and that all issues could be resolved on stipulations and briefs. Pursuant to an Order entered on January 6, 2006, the sole issue before the court is "whether 11 U.S.C. § 1325(a)(5), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective on October 17, 2005, allows the Debtors to surrender JPMorgan Chase Bank's collateral in full satisfaction of its claim."

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(L) (West 1993).

## I

The Debtors filed the Voluntary Petition commencing their joint Chapter 13 bankruptcy case on November 8, 2005. Chase is a creditor of Mrs. Ezell, holding a $24,942.07 claim secured by her 2003 Nissan Xterra (Xterra). Mrs. Ezell purchased the Xterra for the personal use of the Debtors from East Tennessee Nissan on December 26, 2003. Under the terms of the Debtors' Chapter 13 Plan (Plan), the Xterra is to be surrendered "in full satisfaction of debt owing."

The record before the court consists of the following: (1) the Joint Stipulations of Facts Filed by JPMorgan Chase Bank, N.A. filed by the parties on January 25, 2006, along with the following stipulated documents: (a) a Retail Installment Contract and Security Agreement (Contract) for the

15

purchase of the Xterra executed by the Debtor, Regina A. Ezell, on December 26, 2003; (b) a Tennessee Certificate of Title issued on February 4, 2004;[5] and (c) the Proof of Claim filed by JPMorgan Chase Bank, N.A. as secured in the amount of $24,942.07 on December 5, 2005; (2) the Supplemental Joint Stipulation of Facts Filed by JPMorgan Chase Bank, N.A. filed by the parties on February 17, 2006; (3) the Debtors' Brief filed on January 13, 2006; and (4) the Memorandum of Facts and Law in Support of Objection to Confirmation by JPMorgan Chase Bank, N.A. filed by Chase on February 8, 2006.  Also filed were the Amicus Curiae Brief of Intervenors, filed on February 10, 2006, by Knoxville TVA Employees Credit Union, Y-12 Federal Credit Union, Tennessee Members 1st Federal Credit Union, Holston Methodist Federal Credit Union, Citizens National Bank, Bank of Tennessee, ORNL Federal Credit Union, and TNBank (collectively, Bank Intervenors),[6] and the Brief of Amicus Curiae National Association of Consumer Bankruptcy Attorneys in Opposition to the Objection to Confirmation filed by JPMorgan Chase Bank, N.A., filed on February 24, 2006, by the National Association of Consumer Bankruptcy Attorneys (collectively, NACBA Intervenors).[7]  On February 24, 2006, Chase filed a Motion to Set Aside Order Allowing NACBA to Intervene for Purposes of Filing an Amicus Curiae Brief (Motion to Set Aside), arguing that the NACBA Intervenors failed to state sufficient cause in support of their motion to intervene, that allowing NACBA to intervene would cause undue and prejudicial delay, and that Chase was not

---

[5] The Contract was assigned by the seller to Bank One, NA, and the Tennessee Certificate of Title lists Bank One, NA, as the first lienholder on the Xterra. Chase's status as the holder of the claim secured by the Xterra is not explained, nor is it questioned by the Debtors. The court notes, however, that in a Motion for Entry of Agreed Order filed by Chase on March 2, 2006, it explains this omission by identifying itself as the "successor by merger to Bank One, N.A."

[6] On January 23, 2006, the Bank Intervenors filed a Motion for Permission to Intervene for Purposes of Filing an Amicus Curiae Brief, which was granted by an Order entered on January 24, 2006.

[7] On February 10, 2006, the NACBA Intervenors filed a Motion for Permission to Intervene for Purposes of Filing an Amicus Curiae Brief, which was granted by an Order entered on February 14, 2006.

given an opportunity to be heard on the NACBA Intervenors' motion.[8]  For reasons hereinafter

discussed in Section IV of this Memorandum, Chase's Motion to Set Aside will be denied.

## II

As a preliminary matter, the Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 will hereinafter be referred to as "BAPCPA," references to specific sections of the Bankruptcy

Code as amended by BAPCPA will be to 11 U.S.C. § ___ (2005) or to "Revised § ____," references

to the Bankruptcy Reform Act of 1978, as amended, in effect prior to October 17, 2005, will be to

11 U.S.C. § ___ (2004) or to "Pre-BAPCPA § ___," and the concluding alphanumeric paragraph in

Revised § 1325(a), the interpretation of which is the subject of this contested matter, will be referred

to as the "Anti-Cramdown Paragraph."[9]

## III

Following years of debate, BAPCPA became effective on October 17, 2005, for all cases

filed on and after that date.[10]  One section receiving revision was 11 U.S.C. § 1325 (2004), dealing

with the requirements for confirmation of a Chapter 13 plan.  As it relates to this contested matter,

Revised § 1325(a) now provides:

---

[8] On February 28, 2006, the NACBA Intervenors filed a Response to Motion to Set Aside Order Allowing NACBA to Intervene for Purposes of Filing an Amicus Curiae Brief, along with a Memorandum of Law in support thereof.

[9] The drafters of Revised § 1325 did not provide the Anti-Cramdown Paragraph with an alphanumeric designation.  They merely isolated the paragraph at the end of Revised § 1325(a), making it difficult to cite.  The Anti-Cramdown Paragraph is quoted in italics *infra* at page 7 within the text of the quoted provisions of Revised § 1325(a).

[10] Certain of BAPCPA's provisions became effective on April 20, 2005, the date of enactment, but these provisions are not germane to the issue presently before the court.

(a)  Except as provided in subsection (b), the court shall confirm a plan if—

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder;

. . . .

18

> *For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period[11]] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing[.]*

11 U.S.C. § 1325(a) (2005) (emphasis added).

Revised § 1325(a)(5) differs from Pre-BAPCPA § 1325(a)(5) with respect to the treatment of secured claims under subsection (B), which allowed a debtor, pre-BAPCPA, to cramdown secured claims to the value of the collateral securing the claim. Under Revised § 1325(a)(5)(B), the cramdown provision is eliminated as to claims secured by "a motor vehicle" and "any other thing of value" falling within the criteria encompassed within the provisions of the Anti-Cramdown Paragraph. Under Revised § 1325(a)(5), the allowed secured claim of the class of creditors defined in the Anti-Cramdown Paragraph is fixed at the amount of the creditor's claim, without resorting to the secured/unsecured bifurcation procedure mandated by 11 U.S.C. § 506 (2005). The focus of this contested matter centers around Revised § 1325(a)(5) and application of the Anti-Cramdown Paragraph to the "surrender[]" language of Revised § 1325(a)(5)(C).

The Debtors and Chase have stipulated that all elements of the Anti-Cramdown Paragraph have been satisfied. Mrs. Ezell acquired the Xterra for her personal use on December 26, 2003, 684 days before the filing of the Debtors' bankruptcy petition on November 8, 2005, and granted Chase

---

[11] The court supplies this word which was presumably inadvertently omitted by the drafters of the statute.

a purchase money security interest in the motor vehicle to secure the unpaid portion of the purchase price which presently amounts to $24,942.07.

The parties do not dispute that, were the Debtors to keep the Xterra and provide for its payment through the Plan under Revised § 1325(a)(5)(B), the Anti-Cramdown Paragraph would provide Chase with an allowed secured claim of $24,942.07. The Debtors contend, however, that the Anti-Cramdown Paragraph also affords them the right to provide for the surrender of the Xterra through the Plan pursuant to Revised § 1325(a)(5)(C) in full satisfaction of Chase's $24,942.07 allowed secured claim because the Anti-Cramdown Paragraph eliminates Revised § 506 from any application to Revised § 1325(a)(5). Therefore, according to the Debtors, there can no longer be a deficiency claim following surrender of the collateral because Chase's claim is fully secured, notwithstanding any lesser amount that Chase might, in fact, realize upon its liquidation of the Xterra following surrender. Conversely, Chase contends that because the Anti-Cramdown Paragraph expressly provides that Revised § 506 does not apply to Revised § 1325(a)(5), its claim remains fully secured by the Xterra following its surrender, with the result being that any deficiency balance up to the amount of its $24,942.07 claim remains secured and must be treated as such in the Debtors' Plan.

Neither of the Intervenors has expressly argued the same points as the Debtors and Chase. The Bank Intervenors contend that the inapplicability of Revised § 506 under the Anti-Cramdown Paragraph is irrelevant, as that statute never applied in cases involving surrender under Pre-BAPCPA § 1325(a)(5)(C). According to this argument, the Anti-Cramdown Paragraph changes nothing, and secured creditors to whom property is surrendered under Revised § 1325(a)(5)(C) are still entitled

20

to an unsecured deficiency claim following disposition of their collateral. Finally, the NACBA

Intervenors endorse the Debtors' argument that since the Anti-Cramdown Paragraph serves to fix

a claim as fully secured under Revised § 1325(a)(5), then surrender under Revised § 1325(a)(5)(C)

fully satisfies the claim. Alternatively, the NACBA Intervenors argue that the Anti-Cramdown

Paragraph effectively eliminates the application of Revised § 1325(a)(5) from any secured claim

satisfying the Anti-Cramdown Paragraph's criteria since those creditors no longer possess allowed

secured claims under Revised § 506. According to this argument, a secured creditor's claim may,

however, still be modified pursuant to Revised § 1322(b)(2).[12]

---

[12] A Chapter 13 plan "may—. . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]" 11 U.S.C. § 1322(b)(2) (2005).

This argument by the NACBA Intervenors is identical to the analysis by COLLIER ON BANKRUPTCY, as reflected in the following excerpt:

Language added at the end of section 1325(a) by the 2005 amendments to the Bankruptcy Code removes certain claims from the protections of section 1325(a)(5). This new language states that for purposes of section 1325(a)(5), section 506 shall not apply to certain claims. Such claims, therefore, cannot be determined to be allowed secured claims under section 506(a) and are not within the ambit of section 1325(a)(5). Such claims may still be modified under section 1322(b)(2), which allows modification of the rights of holders of secured claims, with certain exceptions, but the restrictions on modification that apply to allowed secured claims under section 1325(a)(5) do not apply. A debtor is presumably bound only by the dictates of good faith and the other provisions of the Code in determining how such claims may be modified. Some courts, understandably, may look to prior law for guidance regarding what modifications are equitable.

8 COLLIER ON BANKRUPTCY ¶ 1325.06[1][a] (15th ed. rev. 2005). Because an application of Revised § 1325(a)(5) in this manner is inconsistent with the purpose of the statute as a whole and the Anti-Cramdown Paragraph in particular, and because it does not take into account the entire claims allowance and disallowance process set forth in 11 U.S.C. §§ 501 (West 2005) and 502 (West 2005), the court does not find this argument persuasive and rejects the same. *See* 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.").

## A

Revised § 1325, entitled "Confirmation of plan," provides that if certain requirements are met, the court "shall" confirm a Chapter 13 plan. *See* 11 U.S.C. § 1325(a) (2005). The confirmation requirements of Revised § 1325(a)(5) offer debtors three options for dealing with allowed secured claims if the plan is to be confirmed:  (1) obtain the creditor's acceptance of the plan (Revised § 1325(a)(5)(A)); (2)  provide for the cramdown of the creditor's allowed secured claim (Revised § 1325(a)(5)(B)), subject to the class of secured creditors depicted in the Anti-Cramdown Paragraph;[13] or (3) surrender of the collateral to the secured creditor (Revised § 1325(a)(5)(C)).

Under Pre-BAPCPA § 1325(a)(5),

[a] debtor has three options regarding secured debt. 11 U.S.C. § 1325(a)(5). First, the debtor and creditor may agree on terms. 11 U.S.C. § 1325(a)(5)(A). Second, the debtor may surrender the collateral to the creditor. 11 U.S.C. § 1325(a)(5)(C). The creditor will then sell the collateral, by definition receiving the foreclosure value. The cash realized will be subtracted from the debt and the difference allowed as an unsecured claim in the debtor's chapter 13 plan. Third, . . . the debtor may retain the collateral. His chapter 13 plan will include a secured claim for the value of the collateral as of the date of filing and an unsecured claim for any difference between the amount owed the creditor and the allowed secured claim. 11 U.S.C. § 506(a), § 1325(a)(5)(B). The secured claim is for the replacement value of the collateral. *Rash*, 117 S. Ct. at 1886. Replacement value, not foreclosure value, is used because, "if a debtor keeps the property and continues to use it, the creditor obtains at once neither the property nor its value and is exposed to double risks:  The debtor may again default and the property may deteriorate from extended use." *Id.* at 1885.

*Davis-McGraw, Inc. v. Johnson (In re Johnson)*, 247 B.R. 904, 906 (Bankr. S.D. Ga. 1999)

(footnotes omitted).

---

[13] For secured creditors not within the scope of the Anti-Cramdown Paragraph, Revised § 1325(a)(5)(B) allows for cramdown in substantially the same manner as under Pre-BAPCPA § 1325(a)(5)(B).  *See In re Horn*, ___ B.R. ___, 2006 WL 416314, 2006 Bankr. LEXIS 234 (Bankr. M.D. Ala. Feb. 23, 2006).

In order to proceed to the issue before the court, it is first necessary to determine whether Pre-BAPCPA § 506(a) was called into play in scenarios where a debtor surrendered collateral pursuant to Pre-BAPCPA § 1325(a)(5)(C), or was applicable only in situations involving cramdown under Pre-BAPCPA § 1325(a)(5)(B). *See Gen. Motors Acceptance Corp. v. Valenti (In re Valenti)*, 105 F.3d 55, 59 (2d Cir. 1997) ("To determine the value of the creditor's allowed secured claim [under Pre-BAPCPA § 1325(a)(5)], we turn to 11 U.S.C. § 506(a) [(2004)].").

**B**

Revised § 1325(a)'s Anti-Cramdown Paragraph provides that Revised § 506 "shall not apply to a claim described in [Revised § 1325(a)(5)]" if the creditor has a purchase money security interest in a "motor vehicle" purchased for the debtor's use within 910 days preceding the bankruptcy or in "any other thing of value" purchased within the 1-year period preceding the bankruptcy filing. Clearly, the Debtors must provide for the treatment of Chase's allowed secured claim within the framework mandated by Revised § 1325(a)(5).

The Anti-Cramdown Paragraph eliminates the application of Revised § 506 to a "motor vehicle" and "any other thing of value" falling within its terms to Revised § 1325(a)(5). Revised § 506, entitled "Determination of Secured Status," provides as follows:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed

23

disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing.  With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506 (2005).[14]


Under Pre-BAPCPA law,

Section 506 is to be applied by bankruptcy courts when a party in interest objects, pursuant to § 502, to the value of a proof of secured claim filed by a creditor in the bankruptcy proceedings. . . . It is clear then that § 506 is designed to determine the

---

[14] Pre-BAPCPA § 506 did not contain subsection (a)(2), which was added to codify the Supreme Court's holding in *Assocs. Commercial Corp. v. Rash*, 117 S. Ct. 1879, 1885 (1997), in which the Court held that valuation of a secured claim under § 506(a) should be based upon replacement value.

value and amount of a creditor's secured claim when the creditor's claim is undersecured in relation to the property securing the debt. In order to achieve its given purpose, § 506(a) divides or bifurcates allowed claims into two parts: (1) a secured claim to the extent of the value of [the collateral]; and (2) an unsecured claim to the extent the value of [the collateral] is less than the amount of such allowed claim.

*Bank One, NA v. Flowers*, 183 B.R. 509, 514-15 (N.D. Ill. 1995).

Pre-BAPCPA § 1325(a)(5), as does Revised § 1325(a)(5), dictated the treatment to be accorded an allowed secured claim if the debtor was to obtain confirmation of the Chapter 13 plan. Although Pre-BAPCPA § 1325(a)(5)(B) and Pre-BAPCPA § 1325(a)(5)(C) provided different remedies and were mutually exclusive, *see In re Covington*, 176 B.R. 152, 155 (Bankr. E.D. Tenn. 1994), both relied upon Pre-BAPCPA § 506(a)[15] to bifurcate a creditor's claim into its allowed secured and allowed unsecured components.

Subsection (C) is clear. If the debtor surrenders his interest in the property securing the claim, the court can find that the requirements of § 1325(a)(5) have been met. The creditor may then foreclose his lien and file an unsecured claim for his actual or expected deficiency. It would be possible for the court to confirm the debtor's plan even though there was a disagreement concerning the value of the property and therefor a disagreement over the amount in which the unsecured claim for deficiency should be allowed. In most cases it would not be necessary for the court to determine the amount of the allowed unsecured claim until the creditor had completed foreclosure of the lien.

If the debtor wishes to retain the property, subsection (C) would have no application.

---

[15] Pre-BAPCPA § 506, entitled "Determination of Secured Status," provides in material part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506 (2004).

Instead, the debtor would utilize subsection (B).  Generally this would be done by
providing in the plan a string of payments which would have a present value
equivalent to the amount of the allowed secured claim.  If the debtor and the creditor
were unable to agree upon the value of the collateral, it would be necessary for the
court to determine such value in order to determine whether the present value of the
string of payments was at least equal to amount of the allowed secured claim.  Unlike
the situation provided by subsection (C), it would be necessary for the court to
determine value prior to confirmation.  Also, valuation could not be determined by
the amount received by the creditor upon foreclosure since foreclosure would not yet
have been accomplished.

*In re Stockwell*, 33 B.R. 303, 305 (Bankr. D. Or. 1983); *see also First Union Mortgage Corp. v.*

*Eubanks (In re Eubanks)*, 219 B.R. 468, 473 (B.A.P. 6th Cir. 1998) ("[Pre-BAPCPA §] 1325(a)(5)(C)

permits a Chapter 13 debtor to satisfy an 'allowed secured claim' by surrendering the property

securing the claim.  After disposition of the surrendered collateral, an undersecured creditor may

only assert the deficiency as a general unsecured claim."); *In re White*, 169 B.R. 526, 529 (Bankr.

W.D.N.Y. 1994) ("The debtor could alternatively surrender the collateral to the secured creditor in

full satisfaction of the creditor's 'secured' claim, relegating the creditor only to 'unsecured' status

as to any deficiency.").  Although these cases were decided under Pre-BAPCPA § 1325(a)(5), they

all apply Pre-BAPCPA § 506(a), if not by direct reference then indirectly, to the bifurcation of the

creditor's claim into its secured and unsecured components upon surrender of the collateral pursuant

to Pre-BAPCPA § 1325(a)(5)(C).  The analysis remains the same under Revised § 1325(a)(5) except

for the elimination of Revised § 506 from the equation when the allowed secured claim is

determined under the provisions of the Anti-Cramdown Paragraph.

Under Pre-BAPCPA § 1325(a)(5), it was only when valuation of a claim was called into

question that the valuation procedure dictated by Pre-BAPCPA § 506(a) was triggered to determine

the amount of the creditor's allowed secured claim.  And, in the context of Pre-BAPCPA

§ 1325(a)(5)(B) and (C), as well as under Revised § 1325(a)(5)(B) and (C), valuation is an issue.

Clearly, Pre-BAPCPA § 506(a) was utilized to determine the amount of a creditor's allowed secured

claim when the debtor utilized the cramdown provisions of Pre-BAPCPA § 1325(a)(5)(B).  As

discussed, Pre-BAPCPA § 506(a) also came into play when the debtor, in compliance with

Pre-BAPCPA § 1325(a)(5)(C), surrendered the collateral.  The creditor then liquidated its collateral

which fixed the amount of its allowed secured claim at the liquidation value, and its allowed

unsecured claim at the deficiency balance.

The argument that Pre-BAPCPA § 506(a) had no application to surrender under

Pre-BAPCPA § 1325(a)(5)(C) is misplaced.  Valuation of a creditor's allowed secured claim under

Pre-BAPCPA § 506(a) was "determined in light of the purpose of the valuation and of the proposed

disposition or use of such property . . . ."  11 U.S.C. § 506(a) (2004).[16]  Upon surrender under

Pre-BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed

secured claim was determined, while, for cramdown purposes under Pre-BAPCPA § 1325(a)(5)(B),

replacement value was the criteria.  *See Assoc. Commercial Corp. v. Rash*, 117 S. Ct. 1879, 1885

(1997).

## C

The Anti-Cramdown Paragraph serves to eliminate Revised § 506 from the allowed

secured/unsecured claim bifurcation treatment otherwise mandated by Revised § 506 with regard to

those claims secured by "a motor vehicle" and "any other thing of value" falling within its

---

[16] *See supra* n. 11.

provisions.  In other words, when the creditor files its claim as secured, the Anti-Cramdown Paragraph precludes the use of Revised § 506(a) to reduce or bifurcate that claim into secured and unsecured components.  Unless the amount of the claim is subject to reduction for reasons other than collateral value, the creditor's allowed secured claim is fixed at the amount at which the claim is filed.

Accordingly, under Revised § 1325(a)(5), a creditor holding a secured claim falling within the scope of the Anti-Cramdown Paragraph is fully secured for the amount of its claim, which is, in actuality, the debt owed.  If the property is to be retained pursuant to Revised § 1325(a)(5)(B), the debtor must treat the entire claim as secured, and unless the creditor agrees to other treatment, must propose a plan that will pay the full amount of the claim as secured over the life of the plan.  It only stands to reason that the same analysis is true when applied to surrender under Revised § 1325(a)(5)(C) – the creditor is fully secured, and surrender therefore satisfies the creditor's allowed secured claim in full.

Although the statutory language itself is not particularly ambiguous, there is no question that, because of its construction, Revised § 1325(a) is, at best, confusing.  *See* Henry E. Hildebrand, III, *Impact of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 on Chapter 13 Trustees*, 79 AM. BANKR. L.J. 373, 386 n. 65 (Spring 2005) ("Though it appears that the intent of the hanging paragraph is to preclude the claim splitting or 'cramdown' that is embodied in 506(a), the means by which such restriction was drafted is confusing, at best.").  A review of the legislative history for guidance does not provide any particular insight that is helpful to the court; however, it

28

also does not provide any evidence that the court's determination does not comport with Congressional intent when including the Anti-Cramdown Paragraph in Revised § 1325(a).

In the House of Representatives' Judiciary Committee Report dated April 8, 2005, the "Section-by-Section Analysis and Discussion" breaks down BAPCPA, as proposed in Senate bill 256. Section 306, concerning § 1325(a)(5) is found in the section entitled "Title III: Discouraging Bankruptcy Abuse," and the synopsis states the following:

> *Sec. 306. Giving Secured Creditors Fair Treatment in Chapter 13.* Subsection (a) of section 306 of the Act amends Bankruptcy Code section 1325(a)(5)(B)(i) to require as a condition of confirmation that a chapter 13 plan provide that a secured creditor retain its lien until the earlier of when the underlying debt is paid or the debtor receives a discharge. If the case is dismissed or converted prior to completion of the plan, the secured creditor is entitled to retain its lien to the extent recognized under applicable nonbankruptcy law.
>
> Section 306(b) adds a new paragraph to section 1325(a) of the Bankruptcy Code specifying that Bankruptcy Code section 506 does not apply to a debt incurred within the two and one-half year period preceding the filing of the bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor within 910 days preceding the filing of the petition. Where the collateral consists of any other type of property having value, section 306(b) provides that section 506 of the Bankruptcy Code does not apply if the debt was incurred during the one-year period preceding the filing of the bankruptcy case.

H.R. REP. 109-31, Pt. 1, at 71-72, 109th Cong., 1st Sess. (2005). Similarly, under the section entitled "Highlights of Bankruptcy Reforms" concerning "Consumer Creditor Bankruptcy Protections," the above revisions were stated as follows:

> Protections for Secured Creditors. S. 256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. Where the collateral consists of any other type of property having value, S. 256 prohibits bifurcation of specified secured debts if incurred during the one-year period preceding the filing of the bankruptcy case. The bill clarifies current law to specify

29

that the value of a claim secured by personal property is the replacement value of such property without deduction for the secured creditor's costs of sale or marketing.

H.R. REP. 109-31, Pt. 1, at 17, 109th Cong., 1st Sess. (2005).

As these sections evidence, Congress intended to prevent bifurcation under Revised § 1325(a)(5) of the class of secured claims falling within the scope of the Anti-Cramdown Paragraph. Beyond these statements of Congressional intent, which basically mirror the statutory language, there is no further clarification.  The court has no choice but to interpret the Anti-Cramdown Paragraph as written, *i.e.*, that it applies to both Revised § 1325(a)(5)(B) and (C).  *See United States v. Ron Pair Enters.*, 109 S. Ct. 1026, 1030 (1989) (holding that if the language of a statute is plain and unambiguous, "the sole function of the courts is to enforce it according to its terms.").  To apply the Anti-Cramdown Paragraph only to Revised § 1325(a)(5)(B), but not to Revised § 1325(a)(5)(C), would allow a secured creditor, upon surrender of its collateral, to bifurcate its claim into different secured and unsecured components, contrary to its unambiguous mandate that Revised § 506 "shall not apply to a claim described in [Revised § 1325(a)(5)]."  11 U.S.C. § 1325(a) (2005).

Furthermore, were the court to find that a secured creditor whose collateral has been surrendered under Revised § 1325(a)(5)(C) is entitled to file either a secured or unsecured deficiency claim, the method of determining the amount of the allowed deficiency claim would be demonstrably at odds with Revised § 506(a), which, as applied to Chapter 13 consumer debtors, directs that for purposes of valuing personal property securing an allowed claim, the value "shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing" and, to the extent the property was "acquired for personal,

30

family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." 11 U.S.C. § 506(b) (2005).  This method for valuing a creditor's allowed secured claim where the collateral is personal property acquired for "personal, family, or household purposes," cannot apply if the property is surrendered under Revised § 1325(a)(5)(C) and thereafter liquidated by the creditor in accordance with applicable state law.[17]

### D

In summary, the court finds that the Anti-Cramdown Paragraph, as mandated by its terms, applies equally to both Revised § 1325(a)(5)(B) and Revised § 1325(a)(5)(C).  Therefore, a creditor whose claim falls within the scope of the Anti-Cramdown Paragraph is fully secured under Revised § 1325(a)(5)(C), regardless of the amount it might realize from the liquidation of its collateral upon surrender.  Because application of § 506(a) is entirely removed from the picture, there can be no deficiency balance, either secured or unsecured, and surrender satisfies an allowed secured claim in full.

The court finds this result fair and in harmony with the language of the Anti-Cramdown Paragraph.  A creditor whose allowed secured claim falls within the terms of the Anti-Cramdown Paragraph is no more or less disadvantaged by the debtor's surrender of its collateral under Revised

---

[17] Under Tennessee law, a secured creditor "may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing[,]" TENN. CODE ANN. of § 47-9-610 (2001), and following disposition, "the obligor is liable for any deficiency[,]" TENN. CODE ANN. § 47-9-615(d)(2) (2001), which includes costs of disposition and attorneys' fees associated therewith. TENN. CODE ANN. § 47-9-616(c)(5) (2001); *see also NationsBank v. Klegg*, No. 01-A-01-9510-CH-00469, 1996 Tenn. App. LEXIS 214, at *4-5, 1996 WL 165513, at *2 (Tenn. Ct. App. Apr. 10, 1996) (discussing consequences of voluntary surrender of collateral).

§ 1325(a)(5)(C) than is the debtor who, if he or she chooses to retain the collateral, must, in compliance with Revised § 1325(a)(5)(B), pay the full amount of the debt in satisfaction of the creditor's allowed secured claim.  To the extent an actual disparity might exist between the value of the collateral and the amount of the creditor's allowed secured claim, perhaps negotiation between the debtor and creditor would allow the "holder of such claim" to accept a treatment under the plan pursuant to Revised § 1325(a)(5)(A) that is more akin to the traditional cramdown permitted under Revised § 1325(a)(5)(B) for secured creditors whose claims do not fall within the ambit of the Anti-Cramdown Paragraph.  This approach appears to the court as one that could prove advantageous to both debtors and creditors.

In accordance with the above, Chase's Objection to Confirmation will be denied, and the Debtors' Chapter 13 Plan will be confirmed.

## IV

As previously stated, Chase's Motion to Set Aside shall be denied.  Pursuant to Rule 2018(a) of the Federal Rules of Bankruptcy Procedure, "[i]n a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter."  FED. R. BANKR. P. 2018(a).  This rule "provides a formal mechanism that expands the right to be heard to a wider class than those who qualify under the 'person aggrieved' standard." *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991).  "A party seeking intervention must show 'cause,' such as an economic interest in the case or a concern with the precedential ramifications of a ruling[;]"

however, the decision to allow intervention is within the court's discretion, although intervention "should not be permitted if the intervenor's rights are already adequately represented or intervention would result in delay or prejudice." *In re Durango Ga. Paper Co.*, 336 B.R. 594, 596 (Bankr. S.D. Ga. 2005); *see also In re First Interregional Equity Corp.*, 218 B.R. 731, 736 (Bankr. D.N.J. 1997); *In re City of Bridgeport*, 128 B.R. 686, 687 (Bankr. D. Ct. 1991) ("As unlimited intervention in contested matters could cause unwarranted and prejudicial delays in the resolution of what are essentially disputes between two parties, 'Rule 2018 gives courts the discretion to balance the needs of a potential intervenor against any delay or prejudice which would result from intervention.'") (quoting *Metro N. State Bank v. Barrick Group, Inc. (In re Barrick Group, Inc.)*, 98 B.R. 133, 135 (Bankr. D. Ct. 1989)).

This narrow question before the court raises an issue of first impression with precedential ramifications, relating to Chapter 13 cases filed in this court. Since the implementation of BAPCPA, bankruptcy courts have been faced with complex issues of interpretation. The issue here presents itself solely in the context of BAPCPA and, therefore, it is not surprising that outside parties, such as the Bank Intervenors and the NACBA Intervenors, would be interested in presenting their arguments in favor of their opposing viewpoints. Also relevant is the fact that the Intervenors' arguments are different from those expressed by the Debtors and Chase, again supporting the court's decision to allow intervention in this case.[18] Moreover, neither the Debtors nor Chase has been subjected to undue or prejudicial delay by allowing the NACBA to intervene. Its motion was filed

---

[18] Curiously, Chase did not file a motion to set aside the court's Order entered on January 24, 2006, allowing the Bank Intervenors to file an amicus curiae brief, perhaps believing that this group better supported Chase's position than did the NACBA Intervenors.

33

on February 10, 2006, with the court fixing a deadline of February 24, 2006, for the filing of an

amicus curiae brief.  The NACBA complied with the court's Order and timely filed its brief.  The

court's determination is now being handed down within a short time, which, clearly, cannot be

deemed an undue or prejudicial delay.

With respect to Chase's contention that it was not afforded an opportunity to be heard, the

court refers Chase to the Rules of Construction for the Bankruptcy Code, which state the following:

In this title—

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances,
and such opportunity for a hearing as is appropriate in the particular
circumstances; but

(B) authorizes an act without an actual hearing if such notice is given
properly and if—

(i) such hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before
such act must be done and the court authorizes such act[.]

11 U.S.C. § 102(1) (2005).  The NACBA Intervenors' motion was filed on February 10, 2006, and

was granted on February 14, 2006, giving it until February 24, 2006, a period of ten days, to file an

amicus curiae brief.  Faced with the concern for undue and prejudicial delay, coupled with the fact

that a hearing on the motion was not requested by any party in interest, including Chase, and, in fact,

was not necessary, the court granted the motion without a hearing.  Furthermore, Chase was served

with the Motion to Intervene via ECF on February 10, 2006, and it was served with the court's

February 14, 2006 Order via U.S. Mail on February 16, 2006.  Yet, at no point prior to February 24,

34

2006, the date upon which the NACBA Intervenors' amicus curiae brief was due, did Chase request a hearing on the Motion to Intervene. Chase now requests a hearing on its Motion to Set Aside, which it scheduled for March 29, 2006; however, the court finds that it would be an undue and prejudicial delay to postpone a decision on this issue for another two weeks, particularly in light of the court's discretion in allowing intervention in the first place. Accordingly, and for the foregoing reasons, the Motion to Set Aside filed by Chase shall be denied.

An order consistent with this Memorandum will be entered.

FILED: March 13, 2006

                              BY THE COURT

                              */s/ RICHARD STAIR, JR.*

                              RICHARD STAIR, JR.
                              UNITED STATES BANKRUPTCY JUDGE